Court, please call the first case. 210-0267, American Engineering v. Stratis May I please the court? That's not a microphone, so keep your voice up, please. Sure. Good morning, judges. My name is Andrew Fernandez. I'm here on behalf of Respondent American Engineering, left arm and shoulder injuries, the left arm and shoulder being Petitioner's non-dominant hand. This case went to arbitrator Frediani, in which the arbitrator awarded wage differential benefits to Petitioner, figuring that Petitioner was capable of working between $12 and $15 an hour. This decision was appealed and brought to the commission, who awarded odd lot benefits, permanent total disability, to Petitioner. The circuit court upheld this decision, and the errors in both the circuit court and the commission decision are the basis of this appeal. We think that there are several very significant errors before this honorable court. First of all, we believe that the standard of review that was used was incorrect. The circuit court and the commission reviewed the arbitrator's decision using a manifest weight standard of review. Now, the commission doesn't review an arbitrator and doesn't apply standards to determine an arbitrator's decision. The commission is the finder of fact, the trier of fact, right? Okay. The circuit court then used the manifest weight standard, where a clearly erroneous standard should have been used, because, in this case, there are questions of fact, there are questions of law, and then there are mixed questions of law and fact. Specifically, there are questions of fact regarding the credibility of the expert's opinions, the vocational experts, which the ---- Correct. So why does that become a factual determination? How does that get involved in the credibility? Well, this is a factual determination because the commission based its decision, in part, to award odd lot benefits, on the fact that it found that both experts who testified, both vocational experts who gave the opinion that Mr. Diligent, unquote, job search, they gave credibility to that statement. Whereas, if you actually look at the record, you find that, factually, these opinions are contradicted by the evidence. For instance, Petitioner hired an expert who met once with the Petitioner and basically reviewed the Petitioner's job search, gave an estimate. Which one are you talking about, Entenberg or Wilhelm? Entenberg. Entenberg admitted on cross-examination that she simply took the number of jobs that Petitioner said he applied to on a weekly basis and multiplied that by the number of weeks he said that he had been applying for jobs. What about Entenberg reviewing the records of independent rehabilitation services, which, according to Entenberg, demonstrated that Klayman had applied for over 1,000 positions? What about that? Yeah, she said that she did that. Who's independent rehabilitation services? Independent rehabilitation services is Respondent's Vocational Rehabilitation. Yours? Yes, ours. Okay. And the reports that Mr. Wilhelm authored state throughout that Mr. Schreiner wasn't conducting a diligent job search. And why did he testify that he had been? We don't know. And that's a problem. It is a problem if you don't know why your expert's testifying to something. I'd agree with that. He gave very bad testimony for us. That's not disputed. This was a very – because what he wrote in his reports is wholly different than what he said on cross-examination, which is that he conducted a diligent job search. Now, I provided this court in my briefs excerpts from Mr. Wilhelm's reports, which repeatedly state that Mr. Schreiner had a disincentive for applying to jobs, that he was receiving Social Security disability benefits, that he turned away a job because he said that his arm was hurting. Well, I – you know, you might take issue with Wilhelm and, you know, you might have some problem with your own rehabilitation service agency. But if it's documented that the gentleman applied for over a thousand positions and hadn't received any offers, are you saying that your company's records are fraudulent? No. I'm saying two things. I'm saying, first, that the number 1,000 is erroneous. And, second, I'm saying that the court needs to consider the quality of the job leads that are pursued. Just because he sends out 1,000 resumes doesn't mean he submitted a quality or a diligent job hunt. Well, if the number 1,000 is erroneous, what number is correct, according to the record? According to the record, I believe approximately half that. I believe approximately 500 to 600 job leads. So is there a threshold 500 is not enough for a diligent job search? Well, again, I think more so than the number of job leads, I think the quality of the interviews or the job leads responded to is what the court should be focusing on. So just to make sure I understand what you're saying, you would concede, though, that he sent out 500 applications and got zero job offers? Well, he got a few interviews, and he did receive zero job offers, yes. Okay. Offers, no offers. Correct. All right. Let's assume you're going to take issue with the number of jobs, and you raise, let's say, a legitimate issue to be considered. Would you also agree that when the issue of ad lat, whether somebody qualifies under ad lat, it is initially the claimant's burden, and once the claimant comes forward with the evidence to establish that, then it becomes the burden of the respondent basically to show that there is a problem with the position or the evidence presented by the claimant. So what evidence did you present to contradict the ad lat argument? To contradict the ad lat argument, we submitted into evidence the vocational rehabilitation reports authored by Mr. Wilhelm, which documents on a monthly basis petitioner's job search and the progress and the results of the meetings with him. We also did submit, we also did put Mr. Wilhelm on the stand, and that in part turned out poorly for us, but the other portion of his testimony does speak to petitioner's ability to be retrained, petitioner's testing. We submitted testing reports that shows petitioner is above average in intelligence. We submitted medical evidence that shows that petitioner is fully capable of working at the medium. Is that all you need to do? Isn't it true that once the employee presents evidence to establish that he or she falls into the ad lat category, isn't your burden to establish that some type of suitable work is regularly available to the employee? It is available, absolutely. Well, how did you do that in this case? We showed that there were several jobs that were available for a petitioner, numerous jobs that were available, and that petitioner actually did a less-than-diligent job with regard to trying to secure these positions. Can you see the difficulty? What do you mean less than diligent? Less than diligent in that petitioner took several months off from his job search to deal with personal issues. He cared for his mother and his grandchildren, I believe, for several months during the job search. Again, he rejected employment at a job interview. He admitted to receiving disability benefits, which poses a disincentive for returning to work. He was very slow in contacting employers and responding to offers from employers. All of which, of course, was pointed out to the commission, right? I believe so, yes. So think about what your argument is to us. You have two experts, one of which is your own. Yes. Saying that he conducted a diligent job search. In cross-examination, yes. And so you're asking us to ignore that and base it, a contrary finding, a contrary result is clearly apparent based on what? In the face of two experts, one of which is your own. How would you summarize why a contrary conclusion is clearly apparent? I would say, first of all, I'm not asking this court to ignore that fact. This court should certainly consider the fact that he did say that there was a diligent job search. But I'm saying that when this court looks at the totality of the evidence, all of the evidence, they will see very clearly that in whole, this person's one single statement elicited on cross-examination runs wholly contrary to the reports that he issued for months. So that we, in essence, then, you're asking us to substitute our judgment of the credibility of the witnesses for the commission, right? In the sense that I suppose so, yes. On what legal theory do we do that? What case law says that we're entitled to do that? On the theory that the decision that was reached was against the manifest weight of the evidence here. The manifest weight of the evidence shows, when you consider all of the evidence, that this petitioner did not conduct a diligent job search. Help me out with the math here. The arbitrator found a claimant was capable of working at jobs between 12 and 15, right? Correct. Okay. So what's the wage differential? The wage differential was 600 and something thousand dollars. Help me out per hour. Pardon me? What were they saying? What are you taking the difference from? The difference was from he was making about $1,700 an hour per week. $1,700? Correct. Dollars an hour? I'm sorry. Sorry, no. That's an excellent job. He was making $1,700 per week. And I believe the arbitrator found that he was capable of making something like $1,100 an hour per week, and that translated into a $600 per week wage differential, which was awarded for life. And the reduced to present cash value at 4% came out to $348,000. Thank you. We do have time on rebuttal. Thank you. May it please the Court. My name is Mark Weisberg. I represent Mr. Schreiner. I won't use a lot of the Court's time. If the Court has any specific questions, I'd be happy to address them very briefly. I feel that there are two ways to prove an odd lot and that we proved them under both of those theories. The Commission agreed and the Circuit Court agreed. We had our expert testimony to support one theory. We had the actual job search to support the other theory. There's no question that this was a diligent job search. It lasted two years. If that's not diligent, I don't know what is. Did he take a break to care for his sick mother? Yes, he did. I'm not sure why that would really matter. Well, just maybe to summarize, to expedite it, obviously your opponent has acknowledged that two expert witnesses, including one of his own, opine that there was a diligent job search. His response appears to be, yeah, that's what they said, but the factual underpinnings of their testimony was flawed. So how do you just respond to that? Well, I think the record supports what they said. I think there's more than ample evidence that he did perform a diligent job search. The only thing that they can point to to try and undermine that certainly doesn't rise to the standard that they would need to rise to here. If there are specific notes within Mr. Wilhelm's reports saying, well, he cared for his mother and he's distracted by that and, you know, a sick relative or he's getting disability benefits from Social Security and therefore he must not want a job, this is more in the nature of the musings of Mr. Wilhelm than actual evidence. There's nothing to support any finding that he was less than motivated. Quite the contrary. Everything points to the fact that he was, in fact, motivated. If there are no further questions, I thank you for your time. Rebuttal, please. Briefly on rebuttal, with regard to the two prongs of the test, we believe that the commission significantly misstated those as well and effectively raised the burden of proof that's required of the respondent. In fact, the first test is that the preponderance of the evidence show that a petitioner is unable to perform any but the most unproductive of tasks for which the stable labor market exists. And in the commission decision, they wrote that the testimony of a vocational expert is sufficient to satisfy that test, when in fact that is just some evidence and not the preponderance of the evidence. And second, the commission stated that the respondent must show that the petitioner can actually get a job. And in very thorough legal research, I could find no cases that set forth that statement of the law. We believe that that's putting a very high burden on the respondent to show that a petitioner actually can secure a job, otherwise the respondent is liable for odd-lot benefits. And that is essentially what the commission wrote in its decision. Again, It was probably fairly unharmful, but the arbitrator found that he was capable of working at a job paying between 12 and 15 per hour. Correct. Because that's a voc tech. Both of them said that. Correct. Truth of the matter is there isn't any out there. Right? Well, we believe that there was evidence. Well, he was claiming he wasn't diligent finding one. Correct. But after 500 applications, there just wasn't anything out there. In that particular pay range, we also believe that there is evidence that a petitioner could have secured a job under $12 an hour jobs for which a petitioner rejected based on the rate of pay. Thank you, counsel. Thank you. The court will take the matter under its guidance for disposition.